**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE MUNICIPAL ELECTRIC UTILITY OF THE CITY OF CEDAR FALLS, IOWA, <br><br> Plaintiff, <br><br> vs. <br><br> MIRON CONSTRUCTION CO., INC. and CONTINENTAL CASUALTY CO. <br><br> Defendants. <br> _____ <br><br> MIRON CONSTRUCTION CO., INC. and CONTINENTAL CASUALTY CO., <br><br> Counter Claimants, <br><br> vs. <br><br> BOARD OF TRUSTEES OF THE MUNICIPAL ELECTRIC UTILITY OF THE CITY OF CEDAR FALLS, IOWA. <br><br> Counter Defendant. | No. 13-CV-2080-LRR <br><br> **ORDER** |

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.   PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.  SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.   FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.    SUMMARY OF ARBITRATION PANEL'S FINDINGS* . . . . . . . . . . . . . . *7*

| | | | |
|---|---|---|---|
| *VI.* | *ANALYSIS* | ................................................ | *9* |
| | A. Parties' Arguments ................................. | | 9 |
| | B. Applicable Law and Application ....................... | | 11 |
| |     1. *Timing of the Motion* ............................ | | 11 |
| |     2. *Legal basis for post-arbitration award of attorney's fees* .... | | 13 |
| *VII.* | *CONCLUSION* ........................................ | | *15* |

## I. INTRODUCTION

The matters before the court are Plaintiff Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa's ("CFU") "Motion for Attorney's Fees and Costs" ("Motion") (docket no. 23) and "Renewed Motion for Attorney's Fees and [Costs]" ("Renewed Motion") (docket no. 28).

## II. PROCEDURAL HISTORY

On November 6, 2013, an arbitration panel entered an Arbitration Award (docket no. 12-3) in favor of CFU and against Defendants Miron Construction Co., Inc. ("Miron") and Continental Casualty Company ("CNA"). On November 8, 2013, CFU filed a Petition in the Iowa District Court for Black Hawk County, Case No. EQCV123297 ("Complaint") (docket no. 10), seeking to confirm the Arbitration Award. On December 3, 2013, Miron and CNA removed this action on the basis of diversity jurisdiction. Notice of Removal (docket no. 8).

On December 6, 2013, CFU filed a "Motion to Confirm Arbitration Award" ("Motion to Confirm") (docket no. 12). On December 30, 2013, Miron and CNA filed a "Motion to Vacate Arbitration Award" ("Motion to Vacate") (docket no. 19).

CFU filed the Motion on January 13, 2014. On January 30, 2014, Miron and CNA filed a "Brief in Opposition to the Motion for Attorney's Fees" ("Resistance") (docket no. 25).

On February 26, 2014, the court denied Miron and CNA's Motion to Vacate and granted CFU's Motion to Confirm in part, reserving ruling on CFU's requests for attorney's fees and costs. *See* February 26, 2014 Order (docket no. 26) at 28. CFU filed

the Renewed Motion on March 12, 2014. On March 31, 2014, Miron and CNA filed a "Brief in Opposition to the Renewed Motion for Attorney's Fees and [Costs]" ("Resistance to the Renewed Motion") (docket no. 39). The court now turns to the Motion and Renewed Motion.

## III. SUBJECT MATTER JURISDICTION

The parties do not dispute that the court has diversity jurisdiction over the instant matter. The parties to an arbitration agreement must have an affirmative agreement providing for judicial confirmation of an arbitration award in order for a federal court to have confirmation authority under 9 U.S.C. § 9. The Contract between CFU and Miron (docket no. 12-4) provides the following:

> All claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract . . . or the breach thereof . . . will be decided by arbitration . . . . The award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof.

Contract at 80. The court is satisfied that it has diversity jurisdiction over this case because complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). For purposes of diversity jurisdiction, CFU is a citizen of Iowa. Miron is a Wisconsin corporation with its principle place of business in Neenah, Wisconsin. CNA is an Illinois corporation with its principle place of business in Chicago, Illinois.

## IV. FACTUAL BACKGROUND

The court accepts the arbitration panel's findings of facts. *See* Arbitration Award at 1-5. The facts of this case are summarized as follows:

The underlying dispute arises from a project to furnish a new filter system for the exhaust-gas stream from a stoker-fired boiler (Unit #6) ("the project"). CFU entered into

a contract with Brown Engineering Co. ("Brown") on April 13, 2005, for Brown to "provide professional services relating to the engineering design and construction management involved in a project to install a fabric filter (baghouse) on Streeter Unit 6." Cedar Falls Utilities Professional Services Agreement (docket no. 19-5) at 1.

In 2006, CFU initiated public bidding for a contractor to build the project. Miron submitted a bid that included a proposal from Dustex, its subcontractor. On August 10, 2006, based on the drawings and specifications that Brown created, CFU entered into the Contract with Miron to complete the project for a price of $3,350,000. Arbitration Award at 2. The Contract provides that Miron, referred to as CONTRACTOR in the Contract, shall

> complete all Work as specified in the Contract Documents. The Work is generally described as follows: streeter station unit no. 6 environmental upgrade—fabric type dust collector addition[.]

Contract at 1 (emphasis omitted). In addition, the Contract states:

> The Project has been designed by the engineering staff of Brown Engineering Company, Des Moines, Iowa, who are hereinafter called ENGINEER and who assumes all duties and responsibilities and have the rights and authority assigned to ENGINEER in the Contract Documents in connection with completion of the Work in accordance with the Contract Documents.

*Id.* at 1. The Contract Documents "comprise the entire agreement" between CFU and Miron, consisting of the eleven items enumerated in the Contract. *Id.* at 4.

The Contract Documents also provide for the resolution of "[a]ll claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract Documents or the breach thereof" to be "decided by arbitration." *Id.* at 80. Additionally, "[t]he award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and it will not be subject to modification or appeal." *Id.*

On February 2, 2007, Miron and Dustex entered into a Purchase Agreement for Dustex's work on the project. Purchase Agreement (docket no. 12-5). Dustex agreed to contract the critical component of the filter system, the dust collection "baghouse," which is a series of hundreds of sixteen-inch, tube-shaped filters housed in four steel modules. The baghouse system includes a sophisticated, automated air system to pulse clean subsets of bag filters while the balance remains in operation. Dustex sized the components of the proprietary filter system based on a performance specification contained in the Contract Documents. In addition, Dustex elected to produce a bottom-flow, rather than a cross-flow, design for the pulse-cleaning system. When the filter bags clog with ash, the upstream exhaust steam pressure increases until it reaches levels unsafe for boiler operation and shuts down the boiler and associated generator. The effectiveness of a fixed filter area is dependent on several factors, including the volume of exhaust gas that must be processed per minute of operation.

The Contract Documents set forth the design parameters for the system and anticipated four equally sized filter modules, one of which was designated as a spare to allow for off-line maintenance and cleaning. The Contract required capacity for any three modules to accommodate the gas volume anticipated by CFU as provided for in the Contract Documents. In addition, the Contract Documents required Miron to size all equipment in the system, including the baghouse, for a maximum flue-gas flow rate of 93,000 actual cubic feet per minute ("ACFM"). The Contract Documents also required Miron to guarantee baghouse performance based on specific fuel, inlet dust loading and a flue-gas flow of 80,000 ACFM at 350 degrees Fahrenheit. The baghouse was required to operate under those conditions with a maximum draft loss, or differential pressure, of six inches w.g. (water gauge) before cleaning and at 99% particulate collection efficiency. The Contract Documents further required Miron to hire a third party to conduct performance tests of the system after thirty days or more of continuous operation of the

5

baghouse. There is no evidence that Miron ever hired a third party to conduct such testing and no performance test was ever run after thirty continuous days of baghouse operation.

In the Purchase Agreement, Dustex intended and agreed that it would satisfy the performance guarantee included in the Purchase Agreement with three modules on line and a fourth module serving as a spare.

The project was completed in the summer of 2007, however, it has never operated to CFU's satisfaction. CNA underwrote a performance bond assuring Miron's performance to CFU with a penal sum of $3,350,000. Accordingly, CNA is subject to the same claims and defenses as its principal, Miron. Arbitration Award at 2.

On August 18, 2009, Miron filed a Demand for Arbitration/Mediation Form (docket no. 12-6), asserting a claim against CFU for $475,000 in damages, the unpaid amount on the Contract. On September 2, 2009, CFU filed an Answering Statement (docket no. 12-7) denying Miron's claim and asserting a counter claim for $1,461,000 in damages. On July 5, 2011, the American Arbitration Association ("AAA") sent counsel for Miron, CFU and Dustex a letter (docket no. 12-12) listing the roster of arbitrators and their resumes from which the parties could select a panel of three arbitrators and noting that, absent an agreement of the parties, "each party shall independently strike the names objected to, number the remaining names in order of preference and return the list to the [AAA]." July 5, 2011 Letter at 2. The July 5, 2011 Letter further stated that if the parties failed to reach an agreement or return the list by the deadline, "the arbitrators will be appointed as authorized in the Rules." *Id.* On October 17, 2011, the AAA sent counsel for Miron, CFU and Dustex a letter (docket no. 12-13) providing the parties with a second list of arbitrators to select from. On December 16, 2011, the AAA sent counsel for Miron, CFU and Dustex a letter (docket no. 12-14) stating that it had "appointed Jerome V. Bales, Wyatt A. Hoch, and Marshall P. Young as arbitrators." December 16, 2011 Letter at 1. In addition, the December 16, 2011 Letter directed the parties to "advise the [AAA] of any

objections to the appointment of" the arbitrators. *Id*. No party objected to the appointment of the arbitrators at any point during the proceedings.

On May 15, 2012, CFU filed a Second Amended Statement of Claims (docket no. 12-19) seeking damages in "an amount in excess of $2,000,000," as well as liquidated damages. Second Amended Statement of Claims at 5. On December 7, 2012, CFU filed a Third Amended Statement of Claims (docket no. 12-26) seeking damages "in an amount in excess of $6,500,000," as well as liquidated damages. Third Amended Statement of Claims at 5. The arbitration hearing began on January 21, 2013, and the arbitration panel heard evidence from January 21 through January 25, 2013; January 28 through January 29, 2013; April 21 through April 23, 2013 and August 26 through August 27, 2013. CFU submitted a Post-Hearing Brief on October 8, 2013 (docket no. 12-41). On that same date, Miron and CNA also submitted a Post-Hearing Brief (docket no. 12-42).

## V. *SUMMARY OF ARBITRATION PANEL'S FINDINGS*

On November 6, 2013, the panel of three arbitrators with the AAA issued an Arbitration Award in favor of CFU. The arbitration panel made the following findings:

First, with respect to CFU's claims against Miron, the arbitration panel found Miron liable to CFU for $274,053.17 in liquidated damages and $33,439.63 for automation of the ash conveyancing system. In addition, the arbitration panel found that Dustex, Miron's subcontractor, intended and agreed to install four equally sized filter modules, one of which was designated as a spare to allow for off-line maintenance and cleaning. Second, the arbitration panel found that Miron breached the Contract with CFU because: (1) Dustex sized the baghouse for a gas flow rate of 80,000 ACFM, below the 93,000 ACFM rate that the Contract required; and (2) Dustex admitted that the baghouse as installed needed to operate with all four modules on-line, rather than with three and one spare, to comply with the Contract. Third, the arbitration panel found that Miron breached an express warranty in the Contract that "all Work will be in accordance with the Contract Documents and will not be defective," Contract at 65 (emphasis omitted), and is liable to

7

CFU pursuant to this alternative theory. Finally, the arbitration panel found that Miron is entitled to a credit from CFU for the $420,872.96, the unpaid balance on the Contract.

Next, the arbitration panel addressed CFU's claims against Dustex. First, the arbitration panel found that CFU is an intended third-party beneficiary of the Purchase Agreement between Miron and Dustex. The arbitration panel found that Dustex breached the Purchase Agreement because the baghouse that it installed did not conform with the specifications set forth in the Contract. Second, the arbitration panel found that CFU is entitled to damages against Dustex because Dustex breached the indemnification provision of the Purchase Agreement and the indemnification provision of the Contract that was incorporated into the Purchase Agreement, which requires Dustex to indemnify CFU. The Purchase Agreement includes an indemnification provision that provides:

> To the fullest extent permitted by law, [Dustex] agrees to hold harmless and defend [CFU] and Miron . . . from any and all claims, demands, and judgments, including attorney's fees, and to indemnify and reimburse [CFU] and Miron . . . for any and all expenses, damage, or liability incurred by [CFU] or Miron . . . , whether directly or indirectly caused in whole or in part by [Dustex], on account of or in connection with any material furnished by [Dustex] under this [Purchase] Agreement, or by any person, firm, or corporation to whom any portion of the material is let or sublet by [Dustex].

Purchase Agreement at 9. The Contract, incorporated into the Purchase Agreement by reference, also requires Dustex to indemnify CFU for all "claims, costs, losses and damages" resulting from any defective work. Contract at 74. These costs include "all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs." *Id.* at 79. Accordingly, the arbitration panel found that CFU is entitled to recover damages resulting from Dustex's breach of these indemnification provisions. The arbitration panel also found that CFU is not entitled to recover against Dustex on theories of equitable indemnity or professional negligence.

Finally, the arbitration panel provided its damages calculations. The arbitration panel found that CFU is entitled to recover the following damages from Miron and CNA: (1) $274,053.17 in liquidated damages; (2) $33,439.63 that was spent to hire another contractor to complete automation of the ash conveying system that Miron left unfinished; (3) $3,419,697.29 to correct the baghouse (which includes an award of $748,659 for professional fees); and (4) less the remaining $420,872.96 that CFU did not pay Miron under the Contract, resulting in a total damages amount of $3,306,317.13. The arbitration panel found that CFU is entitled to recover from Dustex, jointly and severally with Miron and CNA, $3,419,697.29 to correct the baghouse. Finally, the arbitration panel held that Miron and Dustex must pay $171,114.88 for the AAA's fees and expenses and $23,350.00 for the AAA's administrative fees and expenses. The arbitration panel provided that Miron, Dustex and CNA must pay the award within ten days after the date that the last arbitrator signed the Arbitration Award, which was on November 6, 2013.

## VI. ANALYSIS

### A. *Parties' Arguments*

In the Motion, CFU seeks $69,116.50 in attorney's fees that it incurred from October 9, 2013 to January 13, 2014, and $968.30 in costs. CFU asserts that it is entitled to these post-arbitration attorney's fees and costs in connection with the confirmation/vacatur proceedings based on the Contract and Iowa law authorizing an award of attorney's fees when expressly provided by written agreement. CFU maintains that pursuant to its Contract with Miron, CFU can recover "all claims, costs, losses and damages caused by or resulting from . . . correction or removal" of defective work. *See* Brief in Support of Motion for Attorney's Fees and Costs (docket no. 23-1) at 1 (citing Contract at 74). CFU also notes that the Contract states that "[w]henever reference is made to 'claims, costs, losses and damages,' it shall include in each case, but not be limited to, all fees and charges of . . . attorneys and other professionals and all court or arbitration or other dispute resolution costs." *See id.* at 2 (citing Contract at 79). CFU

9

argues that because the Arbitration Award found that the underlying work was defective and the confirmation/vacatur proceedings constitute "other dispute resolution costs," its post-arbitration attorney's fees are recoverable under the Contract. *Id.* at 2.

CFU also argues that the arbitration panel was in no position to decide CFU's claim for attorney's fees incurred in filing the Motion to Confirm and defending against the Motion to Vacate. CFU contends that at the time the arbitration panel issued the Arbitration Award, the arbitration panel could not have anticipated whether Miron and CNA would fail to pay the amount set out in the Arbitration Award, whether CFU would need to file the Motion to Confirm or whether Miron and CNA would file the Motion to Vacate. Under Iowa law, CFU asserts that it would have had the burden to prove both the attorney's services were reasonably necessary and the charges were reasonable in amount. CFU argues that it could not have proved to the arbitration panel that attorney services were necessary for confirmation/vacatur proceedings until Miron and CNA refused to pay the award. Further, CFU argues that federal courts have jurisdiction over confirmation/vacatur proceedings and typically adjudicate attorney's fees claims incurred in those proceedings. In support of such argument, CFU relies on: *Harter v. Iowa Grain Co.*, 220 F.3d 544, 558 (7th Cir. 2000); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992); and *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1340 (9th Cir. 1986).

In the Renewed Motion, CFU does not raise any additional legal arguments but seeks an additional $3,472.50 in attorney's fees that it incurred from January 14, 2014 to March 12, 2014, fees incurred after filing the Motion.

In the Resistance, Miron and CNA first argue that the Motion is "premature and procedurally improper" because CFU filed the Motion before the court entered a judgment on either the Motion to Confirm or the Motion to Vacate. Resistance at 3. Second, Miron and CNA contend that neither the Federal Arbitration Act ("FAA") nor the Contract provides a basis for an award of attorney's fees and costs. Specifically, Miron and CNA

argue that there is no FAA provision permitting the court to award attorney's fees incurred in a post-arbitration proceeding. Further, Miron and CNA argue that the provision in the Contract that permits an award of attorney's fees and costs does not allow the court to award attorney's fees and costs incurred in a proceeding to confirm the Arbitration Award. *Id*. at 5. Miron and CNA maintain that the Contract requires a claim for attorney's fees and costs to be resolved through arbitration. In this case, Miron and CNA argue that if CFU claims it is entitled to post-arbitration fees and costs, then CFU should have sought these costs from the arbitration panel. *Id*. Miron and CNA argue that CFU could have anticipated that it would incur attorney's fees and costs in confirming the Arbitration Award because CFU commenced the post-arbitration proceedings shortly after the arbitration panel entered the Arbitration Award. By failing to request post-arbitration fees and costs with the arbitration panel, Miron and CNA argue that CFU should be barred from recovering these fees and costs.

In the Resistance to the Renewed Motion, Miron and CNA argue that CFU's calculation of attorney's fees and costs improperly includes attorney's fees and costs incurred in a separate confirmation proceeding; specifically, CFU's confirmation action against Dustex Corp., in *Dustex Corp. v. Board of Trustees of the City of Cedar Falls, Iowa, Miron Construction Co. and Continental Casualty*, Case No. 13-cv-2087-LRR. Resistance to the Renewed Motion at 2. Miron and CNA contend that any attorney's fees and costs incurred from the Dustex confirmation action should be sought against Dustex, not Miron and CNA.

### B. Applicable Law and Application

#### 1. Timing of the Motion

Federal Rule of Civil Procedure 54(d)(2)(B) provides, in part, that a motion for attorney's fees and costs must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B). Consonant with Rule 54(d)(2)(B), Local Rule 54.1 states that "[a]ll post-judgment motions for an award of attorney fees must be filed within the time

prescribed by Federal Rule of Civil Procedure 54(d)(2)(B)." LR 54.1. The plain language of these rules indicates that the 14-day period serves as a final deadline for filing a motion for attorney's fees, but it does not indicate that a party is required to wait until after a court enters judgment to submit a request for attorney's fees. This interpretation is consistent with other district courts that have held that a party need not wait until the court enters final judgment before filing a motion for attorney's fees. *See Ashokkumar v. Elbaum*, 2013 WL 1856510, *1, 2013 U.S. Dist. LEXIS 62975 (D. Neb. May 2, 2013) ("Rule 54 limits a motion for attorney fees to 'no later than 14 days after the entry of judgment[,]' but does not preclude such a motion from being filed earlier.") (alteration in original); *Atlas Equipment Co. v. Weir Slurry Grp., Inc.*, 2009 WL 4430701, *1 n.1, 2009 U.S. Dist. LEXIS 116510 (W.D. Wash. Nov. 30, 2009) ("Rule 54(d)(2) does not mandate that a party wait until after judgment to submit a request for attorney fees; rather, it sets a time limit, triggered by entry of judgment, for the filing of such motion."); *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 738-39 (D. Md. 2002) ("It is clear . . . from the plain language of [Rule 54(d)(2)] that the 14 day period marks an outer temporal limit for filing a motion for attorney's fees; it does not establish an unalterable 14 day *post-final-judgment* window *only within which* a motion for an award of attorney's fees may be filed.").

Even if the Motion was premature when filed, this does not mean that the Motion must be denied as premature, and Miron and CNA do not argue that the court should deny the Motion and grant leave to refile it. Miron and CNA merely contend that the Motion is "premature until this Court resolves" the Motion to Confirm and the Motion to Vacate. Resistance at 1. The court has since granted in part the Motion to Confirm and denied the Motion to Vacate, and the clerk of court has entered judgment reflecting the court's order. *See* February 26, 2014 Order; Judgment (docket no. 27). Accordingly, the Motion is now ripe for review.

### 2. *Legal basis for post-arbitration award of attorney's fees*

In federal litigation, a court generally does not award attorney's fees to the prevailing party unless authorized by statute, there is a written agreement between the parties or the losing party acted in bad faith. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-60 (1975). The FAA does not contain a provision awarding a prevailing party the attorney's fees incurred in seeking confirmation of an arbitration award. *See* 9 U.S.C. §§ 1-16 (2012); *Lackawanna Leather Co. v. United Food & Commercial Workers International Union, AFL-CIO & CLC*, 706 F.2d 228, 232 (8th Cir. 1983) (en banc) ("Attorneys' fees are not authorized by statute in suits to enforce arbitration awards." (citing *General Drivers, Helpers and Truck Terminal Employees, Local No. 120 v. Sears, Roebuck & Co.*, 535 F.2d 1072, 1077 (8th Cir.1976))); *see also Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994) ("[T]here is nothing in the Federal Arbitration Act which provides attorneys' fees to a party who is successful in seeking confirmation of an arbitration award in the federal courts."). Also, in this case, there is no basis for an award of attorney's fees under Iowa law and CFU does not claim that Miron or CNA acted in bad faith in filing their Motion to Vacate. Accordingly, if CFU is entitled to attorney's fees incurred in confirming the Arbitration Award and defending the Motion to Vacate, then the authority to award post-arbitration attorney's fees must lie in the Contract.

The Contract states that "[Miron] shall pay all claims, costs, losses and damages caused by or resulting from" the correction or removal of defective work. Contract at 74. The Contract defines "claims, costs, losses and damages" as including "all fees and charges of . . . attorneys and other professionals and all court or arbitration or other dispute resolution costs." *Id.* at 79. However, the Contract also provides for the resolution of "[a]ll claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract documents or the breach thereof" to be "decided by arbitration." *Id.* at 80.

Miron and CNA are correct in asserting that the Contract provision requiring "all . . . disputes . . . arising out of or relating to" the Contract to be decided by arbitration is broad and indicates that the parties intended the arbitration provision to reach all of the parties' disputes arising out of or relating to the Contract. *See Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 393 (8th Cir. 1994) (describing an arbitration clause that covered "any controversy or claim" related to the contract as "broad"); *see also PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) (stating that broad arbitration clauses can encompass disputes that "simply touch matters covered by the arbitration provision" (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008)) (internal quotation marks omitted)). Here, the parties "dispute" whether CFU is entitled to attorney's fees and other expenses incurred in the post-arbitration proceedings and whether CFU is barred from recovering attorney's fees and expenses because CFU did not request them from the arbitration panel. Because this dispute over post-arbitration attorney's fees "aris[es] out of or relat[es] to" provisions in the Contract, specifically, the provision defining "claims, costs, losses and damages" as including "all fees and charges of . . . attorneys and other professionals and all court or arbitration or other dispute resolution costs," Contract at 79, the issues raised in the Motion and Renewed Motion should be resolved through arbitration. *See, e.g.*, *Menke*, 17 F.3d at 1010 (holding that the district court did not err in not awarding post-arbitration attorney's fees incurred in a confirmation proceeding when the parties' contract stated that "any dispute" arising out of the contract was to be settled through arbitration); *Hannibal Pictures v. Les Films de l'Elysee,* 2012 WL 6608595, *3, 2012 U.S. Dist. LEXIS 179704 (C.D. Cal. Dec. 18, 2012) (denying the petitioner's request for attorney's fees because "the parties agreed to resolve 'any dispute' under the agreement in arbitration" and it would contravene the parties' agreement if the court awarded attorney's fees instead of directing the parties to submit the dispute to arbitration); *see also Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 581 (5th Cir.1986) ("[W]here the parties made an agreement intended to avoid court

litigation by resolving the entire dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the [FAA].").

## VII. CONCLUSION

In light of the foregoing, Plaintiff and Counter Defendant Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa's "Motion for Attorney's Fees and Costs" (docket no. 23) and "Renewed Motion for Attorney's Fees and [Costs]" are **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 15th day of April, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA